## Stephen L. Nash *v.* Thos. J. Fletcher et al.    | 44 609 | 86 615 |

1. Purchaser in good faith—Occupancy—Color of title—Limitations—Construction of statute.—Where lands were sold and conveyed by the legal representative of deceased, under an order of the probate court which was void, and the purchaser being unadvised of any defect in said order of sale, received the deed and paid the price in good faith, and entered upon, and cleared, improved and cultivated the land, using the same as a farm on the 28th day of July, 1858, he holds the same under color of .title, and is protected in his possession by the five years limitation prescribed in the eighth section of the act of 6th February, 1860, against all suits at law and in equity, not brought within that period. The terms *bona fide* used in said act, applies to the occupation of the land as a farm, and not to the title.

2. Possession under void title—Color of title.—If the title under which the party relying on possession claims, and originally entered, be ever so defective, such possession is adverse; and if continued for the time limited, under a claim or color of title, merely void, it is a bar to a recovery under an elder title by deed, although, the adverse holder may have had notice of such deed. Angel on Limitations, 435, and authorities there cited; 8 Cow., 589; 16 Johns., 296; 18 ib., 40; 8 Peters, 41; 7 Wheat., 355.

3. Construction of statute.—The act of 6th February, 1860, is not in violation of art. 1, §10, of the constitution of Mississippi. General and special laws of limitations are recognized not only as constitutional, but as being founded on correct principles. Angel on Limitations, ch. 2. The interests of minors, etc., are subjects of legislation and limitation. At common law there was no saving in their favor.

Error to the circuit court of Attala county. Cunningham, J.

Plaintiff in error assigned the following errors :

1st. The court below erred in overruling the plaintiff's demurrer to defendant's second plea.

2d. The court erred in granting defendant's instructions.

3d. The court erred in overruling plaintiff's motion for a new trial in the cause.

*Semmes & Cooper* for plaintiff in error.

The local statute relied on as a defense, is inapplicable.

1st. Because the possession of defendants in error was possession as trustees for Nash, and not adverse to him until his arrival at the age of twenty-one years, on the 28th day of February, 1869.

2d. Because their possession after Nash's arrival at the age of twenty-one, was simply as tenants at will or sufferance of Nash, and consequently there has been no adverse holding. Thomas J. Fletcher is charged with notice of the existence of the will of Madison G. Nash, deceased, under which plaintiff

in error takes the interest which he claims, because said will was probated and recorded in the probate court of the proper county; and he is also charged with notice of the proceedings of sales, etc., of the Madison probate court, under the decree of which he made his pretended purchase, and under which defendants claim title.

And as he and his co-defendants are purchasers with notice, there is no pretense that they acquired the title discharged of that equity. Nailor et ux v. Fisk, 27 Miss., 264; 1 Story's Eq. (7th ed.), 400; ib., 409.

If Fletcher acquired any title by purchase from Young, who, under the will of M. G. Nash was trustee for plaintiff in error, and who was executor of his last will and testament, and also administrator of E. F. Nash, deceased (as an heir at law of whom plaintiff claims an additional interest), he simply acquired the title which Young held to the lands claimed by plaintiff under the will of M. G. Nash, viz.: the title of trustee for plaintiff in error, until his arrival at twenty-one years, and cannot therefore assert any adverse title. Leiper v. Hoffman et al., 26 Miss., 276, 280, 623; 41 ib., Kelly v. Mills, ib., Ware et al. v. Houghton, 384; Ezelle v. Parker et ux, ib., 527.

If Fletcher, at the date of the pretended sale, had notice of the title of plaintiff in error under the will of M. G. Nash, deceased, the probate and record of the same being notice to all the world. Osterman v. Baldwin, 6 Wal. U. S. S. C. Rep. And Fletcher having had such notice of Nash's title and of the defects and irregularities in the proceeding of the Madison probate court, and that Nash's title was unaffected thereby, at the date of his pretended purchase, he can make no pretense that he acquired anything more than Young's trusteeship for Nash; and having become trustee for Nash until his attaining the age of twenty-one years, he is liable to the action of ejectment after that time, just as Young would have been had no sale been attempted, and he (Young) had refused to deliver possession. Calhoun v. Burnett, 40 Miss., 601, *et seq.;* Stone et al. v. Buckner et al., 12 S. & M., 90

91. Under this local statute three things must combine to make the defense effectual: a possession *bona fide*, color of title, and user as a farm for five years. Here the possession *bona fide* is clearly wanting, and the defense fails, even if we admit the constitutionality of the statute, which we do not. Ezelle v. Parker et ux., 41 Miss., 527.

That law simply relieves in cases of hardship where the *bona fide* purchaser would be remediless in the absence of such legislation. Blackwell on Tax Tit., 715; 1 Kent (9th ed.), 516–22; 30 Miss., 319, 320; Green v. Weller et al., 32 ib., 694, *et seq.*; N. O., J. & G. N. R. R. Co. v. Hemphill, 35 Miss., 51; McIntyre et al. v. Ingraham et al., 35, ib., 52; Olive, admr., v. Walton et al., 32 ib., 114.

The construction contended for by defendant would be monstrous and violative of every principle of justice. Neither courts of law or equity will permit statutes, designed for prevention of fraud, to be converted into instruments of fraud and injustice. 41 Miss., 283; ib., 613; Acts 1858, p. 101; ib., 1859; ib., 1860. That Fletcher's possession has not been adverse to that of Nash, since his arrival at the age of twenty-one years, and that Fletcher and wife are the tenants at will or sufferance of Nash, see Ezelle v. Parker et ux., 41 Miss., 527; and that Nash was entitled to the lands at the age of twenty-one. See 4 Kent (9th ed.), 234; 39 Miss., 157.

We also insist that the local act, the 8th section of which is pleaded in bar of this suit, is null and void, because it contains no saving clause "in favor of minors, *femes covert* or any other person," and is in violation of the public policy of the state; because it seeks to take away the property of one person and vest it in another having no claim thereto, which is depriving the citizen of his property, not by the "due course of law," by article 1, section 10, constitution of Mississippi.

*J. A. P. Campbell*, for defendants in error.

The facts of this case, brought it clearly within the 8th

section of the act of February 6, 1860, relative to the destruction of the Attala court-house, and the bar created by it, is complete. It is not disputed that, deducting the period of the suspension of the statute of limitations, five years had elapsed from the date of that act, to the institution of this action. It is admitted that defendant was in possession of the land, July 28, 1858, having bought it and paid for it, in good faith, believing he had good title. This act was intended for just such cases as this. A great calamity had occurred by the destruction of the record of titles to lands, and the only remedy was in the power of the legislature, which passed this act, fixing a short limitation within which all titles to lands should be quieted; and as the evil might embrace all, the remedy was made so general as to embrace all the lands in Attala county.

Fire had obliterated, in many instances, the only procurable evidence of title. Possession, one of the means of title, was the only evidence of right, in many cases. The records of the U. S. land office, showed who entered and received the patent for land, but the only evidence of intermediate conveyances, had been swept away, and a large portion of the land in Attala, became exposed to the grasp of record-mongers and land speculators, who would have it in their power to harrass and annoy the rightful, but exposed owner, by suit in the name of the heirs of the original enterers and patentees. For this great evil, the remedy was furnished by this act. To exclude the land-shark, the statute is limited in its application, to "land in possession, *bona fide*, used as a farm." The *bona fides* has reference to the use, and excludes a possession, merely for the statute of limitations to operate on.

Five years were deemed long enough, and, although the rights of infants, and others under disability, usually protected by savings in their favor, might, in some cases, be involved, it was wisely considered better to hazard loss, in a few instances, to them, than to permit the more important public interests of a great community numbering its thou-

sands, to be jeopardized, by the failure to provide an efficient remedy for the insecurity of their land titles. That the legislature may rightfully dispense with the saving, in a statute in favor of infants and others, is too well settled, to require the citation of authorities.

I have assumed that the act in question has relation to the actual good faith—a good faith as a matter of fact—and has reference to the use as a farm, and not to the acquisition of title; and therefore, there is no necessity for a consideration of the authorities on constructive notice, including the doctrine, that a purchaser at a judicial sale, is chargeable with notice of all that appears on the record of the proceedings, under which he buys. Fletcher was a possessor in good faith, and as such, is protected. Nash was an infant, but the statute was made operative against him, and its provisions show clearly that possession, in good faith, was made the foundation of title, and that no exception was tolerated on account of age or condition of claimant.

TARBELL, J.:

In 1870, Stephen Lynch Nash brought ejectment in the circuit court of Attala county, against Fletcher and wife, to recover a quantity of land particularly described in the declaration. The defendants pleaded the general issue, and also, valuable improvements; a special plea in bar under section eight of an act entitled, "an act further to remedy the evils occasioned by the burning of the court-house of Attala county," approved February 6, 1860, and the statute of limitations.

The plaintiff demurred to the special pleas. The court overruled the demurrer to the plea setting up the law of 1860 in bar, and leave was given to reply to the said plea. The demurrer to the plea of the statute of limitations was sustained, with leave to defendant to plead over. The plaintiff replied to the plea setting up the law of 1860 taking issue.

Exceptions were duly taken and noted. The cause was

tried at the July term of the Attala circuit court, 1870. The
testimony is contained in an agreed state of facts. It ap-
pears that Wilson Nash died in 1853, siesed of one-half the
lands sued for; under his will his two sons, M. G. and E. F.
Nash, took said land jointly; E. F. Nash died in 1854, before
attaining the age of twenty-one years, leaving as heirs at
law, Mrs. A. E. Ross, M. G. Nash, and Stephen Lynch Nash,
the plaintiff; M. G. Nash, died in 1854, and by will devised
unto Elijah Young in trust, until the said Stephen Lynch
Nash should arrive at the age of twenty-one years, one-half
of his interest in said lands, which he acquired under the
will of Wilson Nash, and as heir of E. F. Nash, deceased, to
be delivered to said Stephen upon his arriving at the age of
twenty-one years; said lands were sold under a void decree
of the Madison county probate court by said Young, as execu-
tor of E. F. Nash, deceased, to Thos. J. Fletcher, January 19,
1858; Stephen Lynch Nash, was twenty-one years of age,
February 28, 1860; he never conveyed his interest in the
lands in question to any one, and never received any part of
the purchase money paid by Fletcher to Young; on the 19th
day of February, 1858, these lands were in a state of nature,
unoccupied, and wholly uncultivated; on the last day named
these lands were sold at public outcry at the court-house
door of Attala county, by said Young, executor and adminis-
trator as aforesaid, by virtue of an order of the probate court
of Madison county, and were bought by said Thos. J. Fletcher,
who paid the purchase money to said Young; the order of
sale was void, but Fletcher had no knowledge of any irregu-
larities, and paid the purchase money to Young, supposing
he was getting a good title; he immediately took possession
of said land, and cleared and fenced and cultivated the same,
and was, on the 28th day of July, 1858, in the actual occupa-
tion and cultivation thereof, under his deed from Young;
the deed from Young was for one-half the interest in said
land; the other half interst was bought by Fletcher from W.
F. Walker, the patentee, and the purchase money paid, and
a deed made by Walker to Fletcher, July 6, 1858, though the

purchase from Walker was entered into verbally in 1857; the original deed from Young to Flecther was not destroyed in the burning of the court-house of Attala county, but is now in the possession of Fletcher and was recorded in the proper office, March 10, 1858.

Upon the foregoing state of facts, the court, on the trial, at the request of defendants, instructed the jury as follows "That the deeds from Elijah Young as executor, and as administrator, and William F. Walker to Thos. J. Fletcher, were color of title, and if, on the 28th July, 1858, Thos. J. Fletcher or any one holding under him, was in possession of he land sued for, or any part of it in good faith, using it as a farm, they will find for defendants if five years had elapsed after 6th day of February, 1860, and the time of commencement of this suit, deducting from that period, time between the 31st December, 1862, and the 2d day of April, 1867."

To this instruction the plaintiff excepted. The issue being thus submitted to the jury, they returned a verdict in favor of defendants. Thereupon the plaintiff made a motion for a new trial upon the following grounds: 1st. Because the court erred in overruling the demurrer of plaintiff to defendant's second plea; 2d. Because the court erred in granting defendants first and only instruction; 3d. Because the jury found contrary to the evidence; 4th. Because the jury found contrary to the law and evidence. This motion being overruled, the plaintiff excepted, and now brings his case here for review, submitting as causes of error the following: 1st. That the court erred in overruling plaintiff's demurrer to second plea of defendants; 2d. The court erred in granting defendant's instruction; 3d. The court erred in overruling plaintiff's motion for a new trial.

The questions raised by the demurrers are wholly ignored in the arguments of counsel, and wisely too, as they present no points material to a just determination of the cause. The only question is, was the plaintiff's right of action barred by the eighth section of the act referred to?

The said eighth section is as follows: "That as to all lands

in said county of Attala, which were in possession of persons, *bona fide*, used as a farm on the 28th July, 1858, under color of title (and where a person was in possession of part of a a tract, with a deed to the whole *bona fide*, using the same as a farm, the possession .in such case shall be adjudged to have been co-extensive with the boundaries in the deed), all suits at law or in equity, for the recovery of any such lands, shall be brought within five years from the passage of this act, and not afterwards, and there shall be no saving in such case in favor of minors, *femes covert*, or any other person, but all suits shall be brought within five years from the passage of this act, and after the expiration of five years from the passage of this act, if no suit for the recovery of such lands be brought, the title to all such lands shall be considered in all the courts of this state as having been absolutely in such person as had the same in possession as indicated in the foregoing part of this section, on the 28th day of July, 1858, and the provisions of this section shall extend to cases where possession may have been had by a tenant."

The court-house of Attala county was destroyed by fire July 28, 1858. To remedy the evils occasioned thereby, a law was enacted by the legislature, which was approved December ·3, 1858: "An act further to remedy the evils occasioned by the burning" of said court-house, of which the said eighth section is a part, was approved February 6, 1860.

· The general object of the statute is stated in its title to be to remedy the evils occasioned by the burning of the court-house. The particular object of the eighth section is to quiet titles. The provisions of this section apply "as to all lands in said county of Attala, which were in possession of persons, *bona fide*, used as a farm on the 28th day of July, 1858, under color of title," and it is enacted that "all suits at law, or in equity, for the recovery of any such lands, shall be brought within five years from the passage of this act, and not afterwards, and there shall be no saving in such in favor of minors, *femes covert*, or any other person."

The language of this enactment, in terms, appears to embrace the case at bar. It applies as well to suits in equity as at law, and declares that there shall be no saving in favor of minors and others. So far, the application of this statute to the case under consideration seems to be complete; but the result depends, further, upon the use of the term *bona fide* as employed in this law, and upon what is " color of title." In giving effect to this statute, according to its evident intent, and in accordance with the plain and obvious meaning of its language, we are of the opinion that the term *bona fide* applies to the occupation of the land as a farm, and not to the title of the purchaser. The object, and the construction of this enactment are inconsistent with the theory, that *bona fide* was intended to refer to title. If this had been the intention of the legislature, the phraseology of the law would have been quite different.

What is color of title? This is fully answered in Angel on Limitations, 435, and cases cited therein. If the title, under which the party relying on possession claims, and originally entered, be ever so defective, the possession is, notwithstanding, adverse. An adverse possession for the time limited under a claim or color of title, merely void, is a bar to a recovery under an elder title, by deed, although the adverse holder may have had notice of the deed. Ib.

If the entry be made under color of title, the possession will be adverse, however groundless the supposed title may be. 8 Cow., 589.

In Welborne v. Anderson, 37 Miss., 172, the court says: " It is settled that an adverse possession for the time limited under a claim or color of title, merely void, is a bar to recovery under an older title by deed." *Vide,* also, 16 Johns., 293; 18 ib., 40; 8 Peters, 41; 7 Wheat., 355.

Counsel for plaintiff in error submit an elaborate and carefully prepared brief, and we have critically examined the authorities referred to. The first point made by counsel is, that defendants hold the lands in controversy as trustees for plaintiff. Were this local statute entirely out of view, or had

the defendants have had such notice of plaintiff's title as to amount to fraud; or, if the term "good faith," used in this law applied to the acquisition of title, in such case we think the arguments of the counsel would have been conclusive. With this local statute in force, and applying the term "good faith" to the occupation of the land as a farm, and not to the title, the several cases cited by counsel are clearly distinguishable from the one at bar. The references of counsel are too numerous to be specifically reviewed with reference to the case under consideration; but an examination shows them to be based upon totally different circumstances.

The proof in this case is, that the defendants purchased these lands in ignorance of the defects of title, and, therefore, in good faith in the common signification of that term. They are not chargeable with fraud in fact, nor, with our construction of the statute in question, are they affected by the doctrine of constructive notice.

The question of *good faith* in its application to the acquisition of title is very fully considered in Learned v. Corley, 43 Miss., 687.

Counsel also insist that the law of February 6, 1860, pleaded in bar of this suit by defendants, is in violation of art. 1, § 10 of the constitution of Mississippi. Upon this point we shall not elaborate an opinion, but content ourselves with referring to the fact that general and special laws of limitation are recognized, not only as constitutional, but as founded on correct principles. Angel on Limitation, ch. 2.

Special acts of limitation are of frequent occurrence in this and other states, and are sustained, except for some feature specially obnoxious to constitutional objections. The interests of minors, *femes covert*, etc., are the subjects of legislation and limitation. At common law there was no saving in their favor, and hence the object of affirmative legislation to protect them. In the case at bar, the statute declares there shall be no saving in their favor.

The judgment of the court below is affirmed.